## VALLEAU vs. VALLEAU.

Where the husband; a few months after his marriage, abandoned his wife and left the state, and the wife after the expiration of seven years married a second husband, who died four or five years before the first husband filed his bill for a divorce, founded upon such second marriage, the bill was dismissed.

If the wife, after the husband has abandoned her and been absent more than five years, marries a second husband, the first husband cannot obtain a divorce, on the ground of her adultery with the second husband subsequent to such marriage, unless he can establish the fact that at the time of the second marriage the wife knew that her first husband was living within five years then next preceding.

Where the husband has been absent more than five years, and his wife has contracted a second marriage in good faith; her husband not being known to her to be living within the five years, a cohabitation with the second husband after the mistake is discovered will not entitle the first husband to a divorce on the ground of adultery.

The last marriage being voidable merely, but not void, the remedy of the first husband is by a bill to annul the voidable marriage; and then, if his wife continues to cohabit with the second husband after such marriage has been judicially annulled, the first husband may file a bill for a divorce on the ground of such adulterous intercourse.

Where a second marriage has been contracted in good faith, so as to render the children of such second marriage legitimate under the provisions of the revised statutes, it is improper and illegal for one of the parties to the second marriage to cohabit with the former husband or wife before the last marriage is judicially annulled, or is dissolved by the death of the second husband or wife.

If a complainant knows that his wife has married a second time, and that she is living and cohabiting with her second husband, or if he knows his wife is living in open and notorious adultery with a paramour, his right to a divorce on account of such adultery will be barred at the expiration of five years; although such adultery has been continued down to the time of filing his bill. And where such continued adultery is notorious, the complainant must satisfy the court that, by reason of absence or otherwise, he did not know of the same until within five years previous to the filing of the bill.

THE complainant filed his bill in this cause for a divorce November 1b. on the ground of adultery. The case was heard upon the bill taken as confessed against the defendant, and upon the master's report. From the testimony taken before the master it appeared that the parties were married in the city of New-York, in October, 1821, where the defendant had ever

since resided ; that a few months after the marriage the complainant abandoned his wife and left the state, and shortly afterwards went to sea and was gone until some time in 1827, when he returned and went to Buffalo, where he resided at the time of filing the bill in this cause in April, 1836 ; that some time previous to 1831, but at what time did not appear, the defendant intermarried with Joseph Morin and continued to reside and cohabit with him, in the city of New-York, as his wife, until his death, in 1831 or 1832 ; which was the adultery complained of in the bill.

*D. Tillinghast,* for the complainant.

THE CHANCELLOR. I do not think the complainant's evidence makes out a case which entitles him to a divorce on the ground of adultery, under the provisions of the revised statutes. The testimony shows that but a few months after his marriage, and apparently without any reasonable cause or excuse whatever, the complainant abandoned his wife, and has voluntarily absented himself from her for more than fourteen years ; a considerable portion of which time he was out of the state and out of the country. And there is no allegation or proof whatever to show that at the time of her second marriage, or at any time afterwards before the death of Morin, she knew or had any reason to suppose her first husband was living. As it would have been a felony for the defendant to have contracted the second marriage if she had known that her first husband was then living, although he had absented himself for more than five years, this court cannot, in the absence of all proof on the subject, presume that she has been guilty of such an offence. If the second marriage took place since the adoption of the revised statutes, it is therefore impossible for this court to decree a divorce for adultery on account of her cohabitation with Morin, the second husband, until the fact is satisfactorily established that she knew the complainant was living within the term of five years before her second marriage ; and the master reports that it is not proved that she knew the complainant was living within such term of five years. The

1836.

Valleau
v.
Valleau.

legislature has declared that a second marriage contracted in good faith, where the first husband or wife had absented himself or herself for the space of five successive years, without being known to the other party to be living during that period, is voidable merely; and shall only be considered as void from the time when its nullity shall be decreed by a court of competent authority. (2 *R. S.* 139, § 6.) Where the second marriage, therefore, is contracted in good faith, under such circumstances, although it may be adultery *in foro conscientia* for the parties thereto to continue to cohabit together after they shall have ascertained that the first husband or wife is still living, it is not such a criminal adul-. tery as will authorize the rightful husband or wife to file a bill for a divorce, under the laws of this state. The last marriage being voidable merely, and the children of such marriage being declared legitimate for certain purposes, it would be both illegal and improper for one of the parties thereto to attempt to cohabit with the first husband or wife before the last marriage was judicially annulled. And as a cohabitation with the last one could not conscientiously be continued, inasmuch as it would be inconsistent with the requirements of the divine law, it might, as a matter of conscience merely, be improper to cohabit with either until the last marriage was decreed to be void. The remedy of the former husband or wife, in such a case, is to file a bill, and proceed in the manner prescribed by the statute, to annul the voidable marriage; and if the parties thereto continue to cohabit together after a decree of nullity has been pronounced, the rightful husband or wife may then file a bill for a divorce on the ground of that adultery. If it should be deemed a hardship that a party should be compelled to sue for a dissolution of the second marriage, and to take back a husband or wife who had been thus married to another, it must be recollected that such cases will very seldom occur, except where the party complaining has himself been guilty of a breach of the marriage contract, by a wilful abandonment of his or her companion for a length of time which, by the laws of most countries, would entitle the other party to a divorce. And if he or she has faithfully kept the marriage

vow in other respects for so long a time, it may be no particular hardship to be compelled to keep it in the same manner until the second marriage is annulled, or the bond of the first is dissolved by the death of one of the parties. If, on the contrary, the party complaining has been guilty of adultery during such abandonment, that of itself is a perfect answer to the complaint against the party who has been thus improperly abandoned.

In the present case, if the second marriage took place previous to 1830, and from the testimony I am inclined to think it did as there were two children by that marriage previous to the death of Morin in 1832, it would not come within this provision of the revised statutes rendering the marriage valid for certain purposes until it was legally annulled. That however would not vary the case, so far as to entitle the complainant to a decree for a divorce; as it would then come within the principle of the decision of this court in the case of *Williamson* v. *Williamson*, (1 *John. Ch. Rep.* 486,) which principle is now incorporated into the revised statutes, requiring the suit to be commenced within five years. I presume the complainant in this case has proceeded upon the supposition that the adultery continued down to the death of Morin, and that it was sufficient if the bill was filed within five years from that time. If the case depended upon the question as to what time the last act of adultery with Morin was committed, the court could hardly be called upon to presume that it continued up to the very day of his death, and that he died within the five years. It would, therefore, be proper, in that view of the case, to refer it back to the master to ascertain whether Morin died in 1831 or 1832, and at what time in the year, as neither of the witnesses speak with any certainty even as to the year of his death. And it would also be necessary for the master to make more particular inquiries as to his situation and bodily capacity for some time previous to that event. The decision of this court, however, in the case of *Williamson* v. *Williamson* did not proceed upon any such ground; as the defendant in that case had continued to cohabit with the husband of the second marriage down to the very time of the

1836.

Valleau
v.
Valleau.

filing of the complainant's bill. But that case went upon the ground that the defendant had contracted a second marriage during the complainant's absence in the West Indies, and had from the time of such marriage continued to reside and cohabit with Parisien as her husband; and that the complainant after his return had acquiesced therein by neglecting to commence his suit for more than five years; which, according to the principles of the civil law, was a sufficient acquiescence in the continued adultery of the defendant to bar a suit for a divorce, by the lapse of time. The revisers in their report to the legislature refer to this decision, as containing the principles which they had introduced into the revised statutes on this subject. In conformity with that decision, therefore, I must declare the true construction, of the third subdivision of the 42d section of the article of the revised statutes relative to divorces dissolving the marriage contract, to be that if the complainant knows that his wife has contracted a second marriage and continues openly to cohabit with such second husband, or that she is living in open and continued adultery with another person even without the usual form of a marriage, the right to file a bill for a divorce for such adultery will be barred after the expiration of five years, although such cohabitation or adulterous intercourse is continued down to the time of the commencement of the suit. And where such continued adultery is open and notorious, the complainant must also satisfy the court that, by reason of his absence from the country or otherwise, he was not aware of the fact of such continued cohabitation and adultery until within five years from the time of the commencement of the suit.

In the present case the complainant has wholly failed in satisfying me that he was ignorant of the marriage and continued cohabitation of his wife with Morin until within five years. It appears that he returned to this state as early as 1827, and has resided at Buffalo ever since, and that he also had a sister residing in New-York. If therefore he had taken any pains to inquire as to the situation and conduct of his wife, as it was his duty to do if he was not wholly indifferent on the subject, he must have known that she was

married to Morin and living with him as his wife. There is nothing indeed in this case as it is presented before me by the testimony, to induce me to wish to extend any legal principle for the purpose of dissolving the marriage with the defendant. Although the wife does not appear to make any objection, public policy requires that a husband who has abandoned his wife for such a length of time, and suffered her to contract a second marriage on the supposition that she was released from the obligation of the first, should not four or five years after the death of the second husband be permitted to blast the character of his wife and bastardize the issue of the second marriage; and when it is more than probable, from the ex parte testimony which he has himself produced, that the whole fault rests upon his own shoulders, in improperly deserting the wife of his bosom, within a very few months after his marriage, whom he had promised to love, cherish and protect until death.

If there are any facts which could have presented this case in a more favorable light, I can only regret that they have not been brought before me by the complainant's bill, and by the proofs which he was authorized to produce before the master. As it is, I can only decree a dismissal of the bill. But it may be without prejudice to his rights, if he supposes he can, upon a new bill, present a case entitling him to a divorce, for any misconduct of his wife subsequent to the death of Morin.