JULIETTE CHARLES *vs.* PHŒBE CHARLES and another.

July 8, 1889.

**Marriage by Person whose Husband or Wife has been Absent Five Years—Validity, how Assailable.**—Under Gen. St. 1878, *c.* 62, § 1, where a person whose husband or wife has been absent for five successive years, without being known to such person to be living during that time, marries during the lifetime of such husband or wife, the marriage is valid to the time of a decree annulling it, made by a court with jurisdiction in such matters, in an action for the purpose, and having the proper parties before it. Its validity cannot be assailed collaterally.

By his will, duly proved in the probate court of Ramsey county, Henry G. Charles devised his estate to Edgar D. Charles, whom he also named as executor, and who was duly appointed and qualified as such. Edgar D. Charles died after fully administering the estate, and having applied for a final decree. He left a will in which his widow, Phœbe Charles, was named as executrix and sole devisee. Upon his death, the St. Paul Trust Company was appointed and qualified as administrator with the will annexed of the estate of Henry G. Charles. The application for a final decree coming on to be heard, the claim of Juliette Charles to be the widow of the testator was contested by Phœbe Charles, (as it had theretofore been by her testator, Edgar D. Charles.) The probate court allowed the claim of Juliette, and assigned to her, as the widow of Henry G. Charles, one-third of his real estate. From this decree the St. Paul Trust Company and Phœbe Charles appealed, on law and facts, to the district court for Ramsey county, where the cause was tried by *Brill,* J., who found the following facts:

In October, 1848, in Clinton county, New York, Henry G. Charles and Rachel E. White intermarried, and for a year and a half lived together as husband and wife in the town of Black Brook in that county. At the end of that period, in 1850, Rachel left her husband, and they never afterwards cohabited as husband and wife or had any communication with each other. There were no children of this marriage. In 1852 Henry G. Charles removed to Minnesota where he continued

to reside until his death, in 1883. Rachel is still alive. She resided in said Clinton county until 1866, when she removed to Massachusetts. In 1867 she removed to California, where she has since resided.

In January, 1869, Rachel, not having heard of Henry's whereabouts for many years, and not having known him to be living for the five years immediately preceding, and believing him to be dead, intermarried, in the state of California, with one Perry, with whom she has ever since lived as his wife, and there are three children of this union. On May 1, 1882, Henry G. Charles was married to Juliette Le Feore (the respondent) in Ramsey county, in this state, and they lived together in that county as husband and wife until his death, in 1883. At the time of this marriage Juliette had no knowledge that Henry G. Charles had been previously married. He had not for many years known of the whereabouts or existence of his former wife, Rachel, and she was not known to him to be living at any time during the five years immediately preceding his marriage with Juliette. No action was ever brought to annul this last marriage, nor was it ever adjudged void. The first wife, Rachel, makes no claim to any part of the estate of Henry G. Charles.

As conclusions of law the court held that the marriage with Juliette was valid as between the parties and those claiming under them until adjudged void at the suit of one of the parties, and that Juliette was entitled to a widow's rights in her husband's estate, and was entitled to an undivided one-third part in fee of the real estate left by Henry G. Charles.

From the judgment entered on this decision Phœbe Charles appeals.

*H. J. Horn* and *E. S. Chittenden*, for appellants.

*E. Gribble* and *Davis, Kellogg & Severance*, for respondent.

GILFILLAN, C. J. It is doubtful that appellant is in position to complain of the decision of the court below, whatever view may be taken of respondent's claim to be, so far as rights of property are concerned, the widow of Henry Charles; for, if she was not his widow, so as to be entitled to the widow's share of the property, the first wife, Rachel, was, and was entitled to that share. It is difficult to

see how appellant can complain that the court, instead of assigning it to Rachel, awarded it to respondent. But the court's construction of the statute was right. Section 1, *c.* 62, Gen. St. 1878, provides: "All marriages which are prohibited by law on account of consanguinity between the parties, or on account of either of them having a former husband or wife then living, shall, if solemnized within this state, be absolutely void without any decree of divorce or other legal proceedings: *provided* that, if any person whose husband or wife has been absent for five successive years, without being known to such person to be living during that time, marries during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity is pronounced by a court of competent authority." Section 3 provides: "When a marriage is supposed to be void, or the validity thereof is disputed, for any of the causes mentioned in the two preceding sections, either party may file a complaint in the district court of the county where the parties, or one of them, reside, for annulling the same." The case of Henry Charles and his first wife, Rachel, and second wife, Juliette, comes precisely within the proviso to section 1. The rule of the proviso seems based on the presumption that one absent and not heard from for a specified period is dead. At common law the period was seven years. The proviso shortens it to five, and permits persons to act on the presumption, or assumes that they may act on it, when contemplating marriage, and it treats such a marriage as innocent, and attaches to it consequences which do not belong to a guilty marriage, or one not within the conditions of the proviso. The latter kind of marriage is to be deemed void whenever the facts appear, and although there has been no previous judgment of a court declaring its *status.* In the former case, the facts specified in the proviso appearing, the marriage is not to be held void unless nor until its *status* has been passed on, and its nullity pronounced, by a court of competent authority. An action by either party to such marriage to have it annulled is provided by section 3. The proviso must be understood to mean just what it says, to wit, that the marriage shall be void only from the time that its nullity is pronounced. It is to be deemed valid for the time prior to the entry of a judgment declaring

its nullity, and is void only for the time after the entry of such judgment.

. It is difficult, in a Christian country, to comprehend the idea of two legal marriages of the same person existing at the same time. It is unnecessary, however, to consider that. We need not consider the rights of the parties to the first marriage, whether, as suggested in *Griffin* v. *Banks*, 24 How. Pr. 213, when considering a similar statute, the first marriage is placed in abeyance, and the rights of the parties to it are temporarily suspended, nor whether the absent husband or wife, as suggested in that case, and also in *Valleau* v. *Valleau*, 6 Paige, 207, may have an action to annul the second marriage, and for restoration to marital rights. No party to the first marriage is a party to this proceeding. The *status* of the second marriage, and the rights of the wife under it, are alone in question. That marriage was never pronounced a nullity. The appellant contends that whenever in any case the validity of a marriage comes in question, and it appears that there was a former husband or wife living, the court must hold the marriage void. This would do away with all distinction between the cases mentioned in the proviso to section 1 and the other cases mentioned in the section. For a court could do no more in such other cases. When the validity of the marriage comes collaterally in question, and it has taken place under the circumstances mentioned in the proviso, its validity is established, unless there has been a decree annulling it, and it is established for the time of its continuance prior to such decree. That makes the distinction, as to the consequences, between the cases in the proviso and those in the other part of the section. The words "by a court of competent authority" mean a court with the proper parties before it, in an action instituted for the purpose of annulling the marriage, and having jurisdiction of such matters. The decree of such a court would determine the matter conclusively, so as to be binding as to the *status* of the parties whenever and wherever the question might arise. The marriage is valid until such a court has annulled it.

Judgment affirmed.