NELLIE M. ACKERMAN, Respondent, *v.* CHARLES M. ACKERMAN, Appellant.

**Divorce — Statute of Limitations relating thereto — non-residence of a party.**

The courts of this state have no common-law jurisdiction over the subject of divorce, and their authority is confined altogether to the exercise of such express and incidental powers as are conferred by the statute.

Section 1758 of the Code of Civil Procedure provides: "In either of the following cases the plaintiff is not entitled to a divorce, although the adultery is established: * * * 3. Where there has been no express forgiveness, and no voluntary cohabitation of the parties, but the action was not commenced within five years after the discovery, by the plaintiff, of the offense charged." This period of five years begins when a plaintiff discovers that the defendant has contracted a second marriage and is living and cohabiting with the woman as his wife,

although such cohabitation is continued down to the commencement of the action.

Chapter IV of the Code of Civil Procedure contains the General Statute of Limitations, sections 362–415, inclusive. By section 414 it is enacted, "The provisions of this chapter (IV) apply, and constitute the only rules of limitation applicable, to a civil action or special proceeding except * * * a case where a different limitation is specially prescribed by law, or a shorter limitation is prescribed by the written contract of the parties." Section 401 provides: "If, when the cause of action accrues against a person, he is without the state, the action may be commenced within the time limited therefor, after his return into the state." Hence the continued non-residence of a party excepts by virtue of section 401 the right of a plaintiff to bring an action, from the five-year limitation prescribed by section 1758, nor is the fact that a plaintiff may commence an action by the substituted service of process provided by section 435 and the following sections of the Code of Civil Procedure material on this question.

*Ackerman* v. *Ackerman*, 123 App. Div. 750, affirmed.

(Argued October 26, 1910; decided November 22, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 31, 1908, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George P. Breckenridge* for appellant. Plaintiff is barred from recovery. (Bishop on Mar. & Div. § 426; *Church* v. *State*, 7 N. Y. S. R. 178; *Yoeston* v. *Yoeston*, 32 N. J. Eq. 498; *Higgins* v. *Crouse*, 147 N. Y. 411; *Talmage* v. *Russell*, 74 App. Div. 7; *Marburg* v. *McCormick*, 23 Kan. 38; *Parker* v. *Kuhn*, 21 Neb. 413.)

*John Hill Morgan* for respondent. The second marriage of the defendant being void, cohabiting with another woman constitutes adultery, and is sufficient cause for divorce. (*McGown* v. *McGown*, 19 App. Div. 368; 164 N. Y. 558; *Winston* v. *Winston*, 34 App. Div. 460; *Ranson* v. *Ranson*, 125 App. Div. 915.) The claim of the appellant that section 1758 of the Code, as interpreted by the *Williamson* and

*Valleau* cases, and read in the light of the requirements of rule 72 of the General Rules of Practice, denies the right of divorce to a plaintiff where the first-discovered act of adulterous intercourse has taken place more than five years previous to the commencement of the action, is not in accordance with the history of the statute or the theory of these decisions. (*Williamson* v. *Williamson*, 1 Paige Ch. 487; *Evans* v. *Evans*, 27 Misc. Rep. 10; *Lowenthal* v. *Lowenthal*, 157 N. Y. 236; *Gormerly* v. *McGlynn*, 84 N. Y. 284.)

COLLIN, J.   The parties intermarried December 18, 1889, in the city of Brooklyn, New York, where they resided until January 21, 1891, when the defendant, by reason of a criminal charge against him, left the state of New York.   In October, 1891, defendant was for a few days at Roselle, New Jersey, where the plaintiff visited him.   He then went to Florida, where, on November 9, 1891, he was arrested, taken to Chicago and afterwards confined in the Illinois state penitentiary.   Upon his release he went to and became a resident of Florida.   On the 30th day of November, 1895, he filed in the Circuit Court of St. Johns county, Florida, a bill asking for absolute divorce from the plaintiff on the ground of desertion.   This action proceeded to a decree of February 27, 1896, dissolving the marriage between the parties.   The plaintiff in this action (the defendant in the Florida action) was never served with process within the state of Florida, nor did she appear in said action in the state of Florida or voluntarily submit to the jurisdiction of the Florida court.   The defendant told the plaintiff in a letter of October 6, 1896, received by her that he had obtained the divorce.   October 14, 1896, the defendant remarried at Ocala, Florida, and thence, until the commencement of this action, the parties to such marriage continuously lived as husband and wife.   From October 14, 1896, to February, 1897, they lived in Gainesville, Florida, and since February, 1897, they have lived at Baltimore, Maryland.   The review of the evidence, permitted by the fact that the decision of the Appellate Division was not

unanimous, apprises us that the remarriage of defendant and cohabitation between the parties thereto is the only proof of the adultery of the defendant upon which the decree is based. About the 19th day of October, 1896, the plaintiff received a letter from the defendant's mother telling plaintiff of the defendant's remarriage. Thereupon plaintiff wrote to the defendant's sister informing her of defendant's remarriage, and thereafter often wrote and talked to defendant's sisters regarding said remarriage and the defendant's living with his second wife, and asked if the defendant and his second wife had any children. In October, 1896, plaintiff's brother-in-law, acting upon plaintiff's request, investigated defendant's remarriage by corresponding with various parties in Florida, from whom he received letters about that time informing him that the defendant had remarried and was living in Florida with his second wife, and he then sought to bring the matter before a grand jury in Florida to have the defendant committed for bigamy. In 1902 or 1903 plaintiff's brother-in-law located the defendant at Baltimore, Maryland. The plaintiff has been at all times since December 18, 1889, a resident of the city or borough of Brooklyn, New York. This action was commenced January 27, 1906. The complaint alleged that between the first day of January, 1904, and the first day of December, 1905, the defendant committed adultery at Baltimore with the woman whom he married in Florida. The Trial Term held that the decree of the Circuit Court of Florida assuming to dissolve the marriage between the parties to this action had no binding force or effect upon this plaintiff, and that a divorce should be granted her in this action on the ground of adultery.

The conclusion of the trial court that the Florida divorce was void as to this plaintiff is uncontested by defendant and is indubitable (*Olmsted* v. *Olmsted*, 190 N. Y. 458), nor does the defendant oppose the rule of law that the marriage and cohabitation of defendant with his second wife constituted adultery. (*McGown* v. *McGown*, 19 App. Div. 368; affirmed upon opinion below, 164 N. Y. 558; *Hunt* v. *Hunt*, 72 N. Y.

217.) The defendant contends, however, that plaintiff could not lawfully have the judgment dissolving the marriage between herself and the defendant, because she discovered the adultery of defendant more than five years before the commencement of this action, and, therefore, the judgment was forbidden by section 1758 of the Code of Civil Procedure.

This is a statutory action. The courts of this state have no common-law jurisdiction over the subject of divorce, and their authority is confined altogether to the exercise of such express and incidental powers as are conferred by the statute. (*Walker* v. *Walker*, 155 N. Y. 77.) The law of England concerning divorces was, until the act of 1858, the ecclesiastical and not the common law, and did not become a part of the law of this state. (*Burtis* v. *Burtis*, Hopk. Ch. 557.) In this state, prior to the first statute, that of March 30, 1787, the colonial governor and his council of the legislature had sole jurisdiction concerning divorces. A survey at the outset of those parts of the statute relevant to the questions presented here will be advantageous. A married person may maintain an action to procure a judgment "divorcing the parties and dissolving the marriage, by reason of the defendant's adultery," where (among other cases) the parties were married within the state, or the plaintiff was a resident of the state, when the offense was committed, and is a resident thereof when the action is commenced. (Code Civ. Pro. sec. 1756.) Section 1758 of the Code of Civil Procedure is, in part, "In either of the following cases, the plaintiff is not entitled to a divorce, although the adultery is established: * * * 3. Where there has been no express forgiveness, and no voluntary cohabitation of the parties, but the action was not commenced within five years after the discovery, by the plaintiff, of the offense charged." When the action is brought by the wife, certain designated "regulations apply to the proceedings," one of which is, "the court may, in the final judgment dissolving the marriage, require the defendant to provide suitably for the education and maintenance of the children of the mar-

riage, and for the support of plaintiff, as justice requires, having regard to the circumstances of the respective parties." (Code Civ. Pro. sec. 1759.) A wife dwelling within the state, when she commences the action, is deemed a resident thereof, although her husband resides elsewhere. (Id. sec. 1768.) Other sections contain provisions relating to temporary alimony, costs and other matters not involved, as we think, in our review. The right of plaintiff to maintain this action is unquestioned and unquestionable, because the parties were married within the state, and because also she was a resident of the state, when the offense was committed and when the action was commenced.

Was the judgment forbidden by section 1758 of the Code of Civil Procedure? The language of the introductory clause of that section is in its effect absolute and peremptory. The origin of the section is section 42 of title 1, chapter 8 of part 2 of the Revised Statutes of 1829, wherein the introductory clause read : " Although the fact of adultery be established, the court may deny a divorce in the following cases : " This language remained unchanged, under the several revisions of the statutes, until 1880, and it gave the court the power to grant or deny, in his discretion, the divorce. In 1880 that part of the Revised Statutes which related to matrimonial actions was made a part of chapter 15 of the Code of Civil Procedure and said section 42 became section 1758 of the Code, with, however, the introductory clause amended for the purpose of making it peremptory " in accordance with the settled construction thereof," to its present language. (See note of Mr. Throop to the section.) The words " is not entitled to " therein are, therefore, the equivalent of the words " shall not have."

The findings of the trial court make the conclusion unavoidable that plaintiff discovered the divorce and remarriage and consequently the adultery of defendant in October, 1896. She then became aware of the existence of the divorce and second marriage. She then ceased to be ignorant of them. Her husband then told her that he had obtained the divorce

and within a short time thereafter her husband's mother told
her that he had married another woman.  Her brother-in-law,
in an investigation of these matters, made at about the same
time at her request, obtained the information that defendant
was divorced from plaintiff, had remarried and was living with
his second wife in Florida.  Such information gave just and
cogent reason to plaintiff to believe that defendant had
obtained a divorce from her and had married and was living
with his second wife.  When the plaintiff in October, 1896,
ceased to be ignorant of those facts, when she was apprised of
them by such sources and in such wise that she had just ground
to believe them, then there was a discovery by her of them
and of the adultery committed by defendant through them.

The complaint alleges and the finding is that the defendant
committed the adultery between the first day of January, 1904,
and the first day of December, 1905; the view underlying
such averment and finding being, undoubtedly, that the cohab-
itation through each day constituted a new and independent
offense discovered by plaintiff at the time of its commission.
If this is the true view, this action was obviously commenced
within five years after the discovery, by the plaintiff, of the
offense charged.  The authorities have firmly established, as
it seems to us, the rule that the period of five years began
when the plaintiff discovered in October, 1896, that the defend-
ant had contracted a second marriage and was living and
cohabiting with the woman, as his wife, whom he then mar-
ried, although such cohabitation was continued down to the
commencement of the action.  The principle of such rule was
declared and applied by Chancellor KENT in *Williamson* v.
*Williamson* (1 Johns. Ch. 488), in 1815, in the absence of a
rule or statute upon the subject, upon the ground of public
morality and security.  The chancellor said : " The lapse of
time will, also, and on the soundest principles of justice and
policy, form another exception (than condonation) to the right
of prosecution for a divorce.  An acquiescence of five years,
without any existing disability, was, by the civil law, and is, by
the law of the continental nations who have adopted the civil

law, a bar to a prosecution for adultery. The injured party is presumed to have pardoned or remitted the offense. * * * We may, perhaps, venture to say, that to sustain a bill of divorce for adultery, after the husband (as in this case) has acquiesced under a knowledge of it, for twenty years, would be repugnant to the institutions of all mankind." (p. 492.) The legislature intended to and did incorporate in the Revised Statutes of 1829, in these words of limitation under consideration the principle declared in the *Williamson* case that a husband or wife who acquiesces through the period of five years in the adultery of his or her spouse, consisting in a second marriage and continuous cohabitation thereunder, shall be denied a divorce. (Revisers' notes, 5 Edmunds' Stat. at Large, 40.) In *Valleau* v. *Valleau* (6 Paige, 207) the wife, the defendant, remarried after her husband had absented himself from her for the space of more than six years. She after her remarriage continued to reside and cohabit with her second husband, which was the adultery complained of in the bill. The suit was commenced in 1836, the Revised Statutes of 1829 being then, of course, in force. Chancellor WALWORTH held that the complainant, the husband, had not proved that he was ignorant of the marriage and continued cohabitation of his wife with her second husband until within five years of the commencement of the suit, and said : " I presume the complainant in this case has proceeded upon the supposition that the adultery continued down to the death of Morin (the second husband), and that it was sufficient if the bill was filed within five years from that time. * * *. The decision of this court, however, in the case of *Williamson* v. *Williamson,* did not proceed upon any such ground ; as the defendant in that case had continued to cohabit with the husband of the second marriage down to the very time of the filing of the complainant's bill. But that case went upon the ground that the defendant had contracted a second marriage during the complainant's absence in the West Indies, and had from the time of such marriage continued to reside and cohabit with Parisien as her husband ; and that the com-

plainant after his return had acquiesced therein by neglecting to commence his suit for more than five years; which, according to the principles of the civil law, was a sufficient acquiescence in the continued adultery of the defendant to bar a suit for a divorce by the lapse of time. The revisers in their report to the legislature refer to this decision, as containing the principles which they had introduced into the Revised Statutes on this subject. In conformity with that decision, therefore, I must declare the true construction, of the third subdivision of the 42d section of the article of the Revised Statutes relative to divorces dissolving the marriage contract, to be that if the complainant knows that his wife has contracted a second marriage and continues openly to cohabit with such second husband, or that she it living in open and continued adultery with another person even without the usual form of a marriage, the right to file a bill for a divorce for such adultery will be barred after the expiration of five years, although such cohabitation or adulterous intercourse is continued down to the time of the commencement of the suit." (p. 210.) The Supreme Court of Wisconsin, basing its decision upon *Williamson* v. *Williamson* and *Valleau* v. *Valleau*, has given to the statute of that state, copied from our statute, the same force and effect. (*Dutcher* v. *Dutcher*, 39 Wis. 651.) We deem these authorities conclusive and the rule established by them salutary. The state has a deep interest in the institution of marriage and proceedings for the dissolution of marriage relations. Public morality and those virtues which underlie society, as well as personal and property rights, have close relations with them and will not be protected or promoted by divorces sought after many years of acquiescence in their grounds, through evil and oppressive motives springing from the fact that the defendants have acquired tempting fortunes or reared innocent offspring whose futures may be thereby threatened.

We must now determine the effect of the finding of the trial court that after November, 1895, the defendant was con-

tinuously a non-resident.   Section 401 of the Code of Civil
Procedure provides : " If, when the cause of action accrues
against a person, he is without the State, the action may be
commenced within the time limited therefor, after hisre turn
into the State."   If the provision of section 1758 that the
court must deny the divorce where the action was not com-
menced within five years after the discovery by the plaintiff
of the offense charged, is a mere limitation barring to the
plaintiff the remedy and, if section 401 applies to the action
for divorce, the decree herein is obviously lawful.   Such pro-
vision of section 1758 made statutory the principles declared
and applied in *Williamson* v. *Williamson,* and its scope and
nature are indicated by the reasoning and decision from which
it sprang.   The language of the opinion makes it clear that
the court applied a limitation of time upon the right of plain-
tiff to enforce his cause of action, and that the cause of action
did not depend upon or have as an integral part of itself the
condition that it be begun within the five years.   The decision
did not deny or destroy the liability of the defendant or plain-
tiff's right of action, but denied to plaintiff his remedy and
created a judicial limitation of time in cases of that class.
Undoubtedly a limitation of time may be the essence of and
qualify a right of action so that it does not exist independent
of the limitation (*Hill* v. *Supervisors of Renss. Co.,* 119
N. Y. 344; *The Harrisburg,* 119 U. S. 199; *Reining* v.
*City of Buffalo,* 102 N. Y. 308); but the limitation in sec-
tion 1758 is not of such character and quality.   It, leaving the
cause of action unaffected, destroys the remedy, and is in
the class of limitations created by the General Statute of
Limitations.

   At the time plaintiff's cause of action accrued defendant
was without the state within the meaning of the provision of
section 401 already quoted, and which is applicable to non-
residents. (*Mayer* v. *Friedman,* 7 Hun, 218 ; affirmed, 69
N. Y. 608.)   Chapter IV of the Code of Civil Procedure
contains the General Statute of Limitations constituted of
sections 362 to 415, inclusive.   Section 414 contains this pro-

vision : " The provisions of this chapter apply, and constitute the only rules of limitation applicable, to a civil action or special proceeding, except in one of the following cases : 1. A case, where a different limitation is specially prescribed by law, or a shorter limitation is prescribed by the written contract of the parties." Recent decisions of this court lead to the conclusion that defendant's continued non-residence excepts, by virtue of section 401, from the time of the limitation in section 1758, the right of the plaintiff to prosecute the action. In *Conolly* v. *Hyams* (176 N. Y. 403) it was held that section 405, providing that if an action be commenced within the time limited therefor, and be terminated in any other manner than a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff may commence a new action for the same cause after the expiration of the time so limited, and within one year after such a renewal or termination, was applicable to an action to foreclose a mechanic's lien filed and enforceable under the provisions of the Mechanics' Lien Law. Chief Judge CULLEN, writing for a unanimous court, said : " The tendency of the latest decisions of this court has been to extend to all claims the benefit of the exceptions given by the Code of Civil Procedure to the bar of the Statute of Limitation, except where there is an express statute or contract to the contrary " (p. 407), and this statement is sustained by the decisions referred to by him, in one of which (*Hayden* v. *Pierce*, 144 N. Y. 512) it was held that the limitation upon the prosecution of rejected claims against the estates of decedents, prescribed by section 1822, was subject to the provisions of section 401. In *McKnight* v. *City of New York* (186 N. Y. 35) we held that the limitation in chapter 572 of the Laws of 1886, that actions of negligence against a municipality having fifty thousand inhabitants or over " shall be commenced within one year after the cause of action therefor shall have accrued " was a special limitation and subject to suspension during the existence on the part of claimants of any of the disabilities specified in section 396. The

principle, therefore, making the limitation in section 1758 subject to the exceptions in section 401 is firmly declared. *Wetyen* v. *Fick* (178 N. Y. 223) is not to any extent in conflict with this principle, because therein the special limitation in section 1596 of the Code of Civil Procedure was in itself intended to be complete as to limitations, exceptions and disabilities and, therefore, was within the exception of section 414, subdivision 1. Nor is the fact that the plaintiff might have commenced the action by the substituted service of process provided by section 435 and the following sections of the Code of Civil Procedure material here. (*Simonson* v. *Nafis*, 36 App. Div. 473.)

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY and HISCOCK, JJ., concur; HAIGHT, VANN and WILLARD BARTLETT, JJ., concur in result upon the ground that each act of adultery constitutes a new cause of action.

Judgment affirmed.