ELIZABETH COYNE, Plaintiff, v. CHARLES J. COYNE, Defendant.

Supreme Court, Special Term, Queens County, August 1, 1946.

570

*Morrell Schwimer* for plaintiff.

*Murray Stockman* for defendant.

COLDEN, J. This is an action for an absolute divorce. The plaintiff has established by a preponderance of the credible evidence the commission of adultery by the defendant during the month of June, 1942, and all of the other usual essential elements of her cause of action, and is entitled to a decree in her favor unless the defense interposed by the defendant is a bar.

The defendant alleges, for an affirmative, separate and complete defense, pursuant to subdivision 3 of section 1153 of the Civil Practice Act, that the acts of adultery occurred more than five years prior to the commencement of this action and were known to the plaintiff at or about the time of their commission, and that this action was not commenced within five years after the discovery by the plaintiff of the offense charged.

The plaintiff in her complaint alleges that the defendant " lived adulterously and unlawfully cohabited with a woman known to plaintiff as May E. Arnold, at premises 64–55 — 82nd Place, Rego Park, Queens County, New York, from about the month of August, 1932 and so still continues." The proof shows that the act of adultery upon which plaintiff bases the present action occurred in June of 1942 and was committed with the said May E. Arnold.

The issue squarely presented for decision is the meaning and application of subdivision 3 of section 1153 of the Civil Practice Act. The proof establishes that the adultery in June, 1942, obviously occurred as to that act, within the five-year period. The proof also establishes that since 1933 the plaintiff has had knowledge of the continuing adulterous relationship between the defendant and the same woman with whom the June, 1942, act was committed, for a period of over twelve years — from 1933 down to the time of the commencement of this action. During all of this time the defendant was available for service of process upon him in the State of New York.

The historical development since colonial days of subdivision 3 of section 1153 of the Civil Practice Act may be found in *Williamson* v. *Parisien* (1 Johns. Ch. 389), *Williamson* v. *Williamson* (1 Johns. Ch. 488), *Valleau* v. *Valleau* (6 Paige Ch. 207), *Dutcher* v. *Dutcher* (39 Wis. 651) and *Ackerman* v. *Ackerman* (200 N. Y. 72, affg. 123 App. Div. 750).

The determination here to be made is whether this court shall follow the interpretation made more than 130 years ago by Chancellor KENT in *Williamson* v. *Williamson* (*supra*) and cited with approval nearly half a century ago in *Ackerman* v. *Ackerman* (*supra*) or whether this court shall follow the interpretation of Judges HAIGHT, VANN and WILLARD BARTLETT in the *Ackerman* case to the effect that each act of adultery constitutes a new cause of action.

In *Williamson* v. *Williamson* (*supra*) the following facts appear: That the plaintiff was married to the defendant in 1780 in the city of New York by whom he had three children; that the plaintiff was absent from the city of New York from June, 1784, to June, 1792; that when he returned in June, 1792, and found that his wife was living with Parisien, the plaintiff departed from New York and remained absent until June, 1812. During the absence of the plaintiff from 1784 to 1792 his death was reported and the defendant married Parisien, by whom she had a child and with whom she and her child had since lived and at the time of the commencement of the action were living. The bill for a divorce was filed in June, 1815, and alleged the commission of a specific act of adultery on the 20th day of April, 1814, predicated upon the fact that the defendant and Parisien were living together as man and wife. Said Chancellor KENT (pp. 492–493): " I think enough has been said to show, that a decree for a divorce is not to be taken as *of course,* though the fact of adultery may have existed; and I cannot but persuade myself, that when the statute created a jurisdiction in this Court, for the cautious and limited exercise of the power of divorce, it intended that those settled principles of law and equity on this subject, which may be considered as a branch of the common law, should be here adopted and applied.

" *The lapse of time will, also, and on the soundest principles of justice and policy, form another exception to the right of prosecution for a divorce.* An acquiescence of five years, without any existing disability, was, by the civil law, and is, by the law of the continental nations who have adopted the civil law, a bar to a prosecution for adultery. * * * In the present case, the husband returned in 1792, and found his wife recently

married, in consequence of his long absence of eight years, and presumed death. Why did he not then reclaim her, or prosecute? He did neither; but departed again from this state, and lived continually abroad, for 20 years, acquiescing in this second marriage, and suffering her offence to aggravate and become inveterate. She has had several children, and has spent the best part of her life in connection with her present partner. If ever lapse of time, or long acquiescence, formed a just bar to this kind of prosecution, this is one. Can it be fit, or decent, or useful, that, *without any reason or apology for this delay,* he should now be permitted to come into Court to expose and disgrace this woman? Most certainly not; and I shall, accordingly, decree that this bill be dismissed, with costs." (Emphasis supplied.)

The decision in the case of *Williamson* v. *Williamson* (*supra*) was considered by Chancellor WALWORTH in *Valleau* v. *Valleau* (6 Paige Ch. 207, *supra*) wherein the Chancellor said, referring to the case then under consideration (pp. 210–211): " * * * it would then come within the principle of the decision of this court in the case of *Williamson* v. *Williamson* (1 Johns. Ch. Rep. 486) which principle is now incorporated into the revised statutes, requiring the suit to be commenced within five years. I presume the complainant in this case has proceeded upon the supposition that the adultery continued down to the death of Morin, and that it was sufficient if the bill was filed within five years from that time. * * * The decision of this court, however, in the case of *Williamson* v. *Williamson*, did not proceed upon any such ground; *as the defendant in that case had continued to cohabit with the husband of the second marriage down to the very time of the filing of the complainant's bill.* * * * The revisers in their report to the legislature refer to this decision, as containing the principles which they had introduced into the revised statutes on this subject. In conformity with that decision, therefore, I must declare the true construction of the third subdivision of the 42d section of the article of the revised statutes relative to divorces dissolving the marriage contract, to be that if the complainant knows that his wife has contracted a second marriage and continues openly to cohabit with such second husband, *or that she is living in open and continued adultery with another person even without the usual form of a marriage, the right to file a bill for a divorce for such adultery will be barred after the expiration of five years, although such cohabitation or adulterous intercourse is continued down to the time of the commencement of the suit.*" (Emphasis supplied.)

Nearly one hundred years subsequent to the decision in *Williamson* v. *Williamson* (*supra*) our Court of Appeals considered that case and *Valleau* v. *Valleau* (*supra*) in the case of *Ackerman* v. *Ackerman* (200 N. Y. 72, 80, *supra*) wherein the court said: " We deem these authorities conclusive and the rule established by them salutary. The state has a deep interest in the institution of marriage and proceedings for the dissolution of marriage relations. Public morality and those virtues which underlie society, as well as personal and property rights, have close relations with them and will not be protected or promoted by divorces sought after many years of acquiescence in their grounds, through evil and oppressive motives springing from the fact that the defendants have acquired tempting fortunes or reared innocent offspring whose futures may be thereby threatened."

It is to be noted, however, that the discussion in the *Ackerman* case (*supra*) of the principles of law enunciated in the *Williamson* case (*supra*) and the *Valleau* case (*supra*) was not pertinent, relevant or essential to the determination of the *Ackerman* case and may properly be regarded as obiter dictum. Jurisdiction within the State of New York of the defendant in the *Ackerman* case was not acquired until January, 1906. The complaint charged the defendant with adultery between November, 1904, and October, 1905, with the same person with whom the defendant had been living in adulterous intercourse since October, 1896. Plaintiff had knowledge of such adulterous relationship for ten years before she commenced her action. The defendant's absence from the State of New York, however, precluded the plaintiff from acquiring jurisdiction based upon personal service within the State until it was made in 1906. Because of Ackerman's continued absence from the State of New York, the provisions of the law of our State, as now embraced in section 1153 of the Civil Practice Act, were not applicable to the facts in the *Ackerman* case. In considering the applicability of section 1153, it is to be noted that at the time of the decisions in *Williamson* v. *Williamson* (*supra* [1815]) and *Valleau* v. *Valleau* (*supra* [1836]), the court could exercise judicial discretion in granting or withholding the decree. Thus in 1829 when the Legislature revised our statutes, it provided that " Although the fact of adultery be established, *the court may deny* a divorce in the following cases: * * * Where there shall have been no express forgiveness, and no voluntary cohabitation of the parties, but the suit shall not have been brought within five years after the discovery by the complainant, of the offence charged ". (Em-

phasis supplied.) [Rev. Stat. of N. Y., part II, ch. VIII, tit. I, § 42, subd. 3.] Inasmuch as the statute was based upon *Williamson* v. *Williamson* (*supra*) it is important to note the very plain implication by Chancellor KENT that the decision could have been otherwise, had the plaintiff given " any reason or apology for this delay " in bringing the action. In 1880 the Legislature removed the discretionary power implicit in the statute of 1829 and substituted the mandatory provisions reading " In either of the following cases, *the plaintiff is not entitled to a divorce* although adultery is established: * * * 3. Where there has been no express forgiveness, and no voluntary cohabitation of the parties, but the action was not commenced within five years after the discovery, by the plaintiff, of the offence charged." (Emphasis supplied.) This legislation became section 1758 of the Code of Civil Procedure and is now found without change in section 1153 of the Civil Practice Act.

It is to be observed that in *Ackerman* v. *Ackerman* (*supra*) the court sustained the judgment in favor of the plaintiff, three judges concurring with the opinion of Judge COLLIN and three judges concurring in the result upon the ground that each act of adultery constitutes a new cause of action.

It does not appear that since 1880 our higher courts have determined the interpretation of subdivision 3 of section 1153 as it now stands. While it is true that most respectful consideration must be given to the dicta in the *Ackerman* cases (*supra*) the importance of the subject to innocent wives, legitimate children of lawful marriages, and the sanctity of the home and of marriage, and, to the State itself, are persuasive that application of the statute with due consideration for the rights of all parties to the litigation must again invite examination by our courts.

None of these decisions appears to have considered the position of the innocent spouse. There are those who live in the hope that the marriage status may be restored, that the erring spouse will return to the family fireside, that the innocent children of the legitimate union may be spared the suffering and humiliation which frequently attend public disclosures in divorce proceedings. There are those whose religious training and background urge them to avoid the divorce court and to try by every dignified means and self-sacrifice to preserve and to restore the marriage relationship. Society has much to gain by preserving the original marriage. Yet, under the interpretation urged by the defendant, the burden is placed upon the innocent spouse to promptly expose herself and her family to all which a divorce proceeding means, or else, after the passing of five

years to be forever barred as to all subsequent adulteries **no** matter how the circumstances may have changed, from presenting her cause to our courts as to such subsequent adulteries. Under such interpretation sought by the defendant, the result will be that every erring spouse, once he has safely passed the five-year mark, will be immune for the rest of his life from any action for absolute divorce based upon continuing adultery with the same person, no matter how openly and notoriously he continues to live in such adulterous relationship.

The solicitude of the court expressed at page 80 in *Ackerman* v. *Ackerman* (200 N. Y. 72, *supra*) for the defendants who " have acquired tempting fortunes or reared innocent offspring whose futures may be thereby threatened " should be extended so as to include the innocent lawful wife and innocent lawful offspring.

In *Ackerman* v. *Ackerman* (*supra,* p. 83) it is stated: " HAIGHT, VANN and WILLARD BARTLETT, JJ., concur in result upon the ground that *each act of adultery constitutes a new cause of action.*" (Emphasis supplied.) It is clear that if such standard is applied as the rule, we shall avoid the unfortunate consequences following the application of dicta in *Ackerman* v. *Ackerman* (*supra*) whereby a defendant acquires permanent immunity as to all past, present and future acts of adultery with the same person once the initial five-year period has passed without suit. The five-year statute should be applied in the light of the reasoning of Judges HAIGHT, VANN and WILLARD BARTLETT in *Ackerman* v. *Ackerman* (*supra*) " that each act of adultery constitutes a new cause of action." By such interpretation and application, acts of adultery of which plaintiff has made discovery more than five years prior to the commencement of the action would be barred, assuming that the defendant was available for service of process within the jurisdiction during such period. On the other hand, all acts of adultery of which the plaintiff had knowledge for a period of less than five years would not be barred, and as to such a cause of action should lie and not be subject to defeat because of prior adulteries of the defendant it matters not for how many years before the ultimate five-year period. Such interpretation protects a defendant from suit for incidents that have become remote, but holds him liable for the more recent acts as to which action was commenced at any time within five years after the discovery of the offences charged by plaintiff. Such interpretation is made in this case and this court determines that the defense interposed herein has no application to the facts in this case and in consequence thereof is not a bar to plaintiff's cause of action.

The plaintiff having established her cause of action by a preponderance of the credible evidence, judgment for an absolute divorce is granted for her, with costs. Alimony is allowed in the sum of $12 per week. All motions made by defendant upon which decision was reserved are denied, with an appropriate exception in each instance to the defendant. Settle on notice.