### ACKERMAN v. ACKERMAN.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. DIVORCE—JURISDICTION—PERSONAL SERVICE—FOREIGN DIVORCE.

Defendant, whose wife resided in New York, brought divorce proceedings in Florida. An order for service of process by publication was issued, and a decree pro confesso was made granting him a divorce. The record showed no personal service of process upon the wife, either within or without the state of Florida, and she had no notice of the action or of the application for the decree until after it had been granted and entered. *Held*, that the court was without jurisdiction, and the decree was void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, § 221.]

2. SAME—PLEADING—ALLEGATION AS TO TIME SINCE DISCOVERY OF ADULTEROUS INTERCOURSE ALLEGED—RULE OF PRACTICE—CONSTRUCTION.

Rule 72 of the general rules of practice, providing that when an action for divorce is on the ground of adultery, unless it be averred in the complaint, where at the time of the offense charged defendant was living in adulterous intercourse with the person with whom the offense is alleged to have been committed, that five years have not elapsed since the commencement of such adulterous intercourse was discovered by plaintiff, and the complaint containing such averments be verified by plaintiff's oath as prescribed by the Code, judgment shall not be rendered for the relief demanded until plaintiff's affidavit be produced stating such facts, applies only where application is made for divorce in cases of default, and has no application to contested actions.

3. COURTS—RULES—POWER TO REGULATE PROCEDURE.

General rules of practice must not be inconsistent with the provisions of the Code; and no rule can enlarge or abridge the rights conferred by the Code itself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 274–277.]

4. WORDS AND PHRASES—"DISCOVERY."

"Discovery" means something more than mere suspicion. It implies a certain degree of knowledge on the part of the person to be charged with the consequences of such discovery.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 2093–2095.]

**5.** Divorce — Proceedings — Time to Bring — Limitations — Discovery of Adultery Charged.

Defendant deserted plaintiff, his wife, and left the state in 1891. In 1896 he obtained a divorce in Florida, which was void in this state because of lack of jurisdiction of the wife. During the same year plaintiff heard that he had married again, but when or where the marriage was contracted, or who his alleged second wife was, was not made known to her, and it did not appear that she ever knew where he was living, except that he was somewhere in Florida. In 1897 he left Florida and disappeared, and it was not until 1902 or 1903 that, through the efforts of plaintiff's brother-in-law, acting in her behalf, he was located in Baltimore, living with the woman he had so married. *Held*, that the information conveyed to plaintiff, more than five years prior to the commencement of her action for a divorce, that defendant had remarried, would not preclude her obtaining a divorce, under Code Civ. Proc. § 1758, providing that a plaintiff is not entitled to a divorce, although adultery is established, where the action is not commenced within five years after plaintiff's discovery of the offense charged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, § 233.]

Gaynor and Jenks, JJ., dissenting.

Appeal from Special Term.

Action for divorce by Nellie M. Ackerman against Charles M. Ackerman. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

George P. Breckenridge, for appellant.

John Hill Morgan, for respondent.

WOODWARD, J. This is an appeal from a judgment granting to the plaintiff a decree of absolute divorce on the ground of the defendant's adultery. The decree also awarded the plaintiff alimony. It appears the parties were married in the city of Brooklyn in 1889, where they continued to live until January, 1891, when the defendant left the state, and went to Chicago because charged with the commission of a felony. He remained there until October, 1891, when he returned to New Jersey, and stayed a few days with his sister, where his wife visited him. From there he went to Florida, where he was apprehended. Later he appears to have been convicted and confined for three years in the Ohio Penitentiary, and on his release wandered to Florida. On the 30th of November, 1895, he filed a bill in the circuit court of St. Johns county, Fla., asking for an absolute divorce from the plaintiff, on the ground of alleged desertion. An order for service of process by publication was issued the same day, and in February, 1896, the decree pro confesso was made, assuming to dissolve the marriage between the parties. The record of the Florida decree does not disclose any personal service of process upon this plaintiff either within or without the state of Florida, and she had no notice of the commencement of the action or of the application for the decree until after it had been granted and entered. On the contrary, it appears that in October, 1896, the defendant wrote his wife, advising her for the first time he had procured the decree in question. On October 14th of the same year he married the co-respondent, Maud Ackerman, in Florida, and it is for alleged adultery with this person

that this action is brought, upon the theory that the Florida divorce is void as against this plaintiff. The contention that the decree of the Florida courts was without jurisdiction and void is fully sustained by the recent case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867; and the correctness of this rule does not appear to be seriously questioned by the counsel for the defendant in this action. It is, however, seriously urged by the counsel for the defendant that the judgment of divorce rendered in this action cannot be sustained because the plaintiff knew of the defendant's remarriage more ·than five years prior to the commencement of this action, and relies upon the provisions of section 1758 of the Code of Civil Procedure, and of court rule 72 as a bar to this action. The question as to the knowledge of the plaintiff is disputed by counsel for the plaintiff. Let us assume, however, she had knowledge of such remarriage, and of the adulterous intercourse which followed and continued down to the time of the commencement of this action. Does that circumstance bar a recovery? Section 1758 provides as follows:

"In either of the following cases, the plaintiff is not entitled to a divorce, although the adultery is established: * * * (3) Where there has been no express forgiveness, and no voluntary cohabitation of the parties, but the action was not commenced within five years after the discovery, by the plaintiff, of the offence charged."

Rule 72 of the general rules of practice provides as follows:

"When the action is for a divorce on the ground of adultery, unless it be averred in the complaint * * * and also, where at the time of the offense charged, the defendant was living in adulterous intercourse with the person with whom the offense is alleged to have been committed; that five years have not elapsed since the commencement of such adulterous intercourse was discovered by the plaintiff, and the complaint containing such averments be verified by the oath of the plaintiff in the manner prescribed by the Code, judgment shall not be rendered for the relief demanded until the plaintiff's affidavit be produced stating the above facts."

Rule 72 relates entirely to what is required where application ·is made for a divorce in cases of default, and has no technical application to contested actions such as the one now under consideration. If the rule in question were to be deemed to apply to contested cases, it would still remain a question whether the rule were in harmony with the provisions of the Code; for, although general rules of practice may be from time to time adopted and promulgated, such rules· must not be "inconsistent" with the provisions of the Code, and no rule can enlarge or abridge the rights conferred by the Code itself. We are therefore brought back to the consideration of what should be the proper construction of section 1758 of the Code when applied to the circumstances of a case like this.

If the defendant in this case had continued to be a resident of the state of New York and subject to the jurisdiction of its courts so that process could have been served upon him at any time, and he had again married and continued to live and cohabit with his second wife with the knowledge on the plaintiff's part of that relation, and the plaintiff had acquiesced in such conduct without taking steps to obtain a divorce, there would be a natural justice in denying her the re-

lief she now seeks. It appears, however, that the defendant absconded, and for upwards of 15 years has kept himself without the jurisdiction of the state, and his exact whereabouts unknown to the plaintiff, although she undoubtedly knew he was located somewhere in Florida. But in 1897 he left Florida, and appears to have gone to the state of Maryland, and it was some time in 1902 or 1903 the plaintiff's brother-in-law located the defendant at Baltimore. Under such circumstances, ought an innocent party be barred from obtaining a divorce from an absconding husband when he has left the state, and kept his whereabouts concealed, simply because she may have learned that at some time more than five years prior to the commencement of the action he had married again. A decree of divorce obtained by substituted service of process upon the defendant would have been worthless for the purpose of getting an enforceable personal judgment for alimony, and it would be very doubtful under the decision of the U. S. Supreme Court in Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, whether such a divorce would have been valid for the purpose of dissolving the marriage relation. We should hesitate to hold that, under such circumstances, the plaintiff is precluded from obtaining a divorce. The language of the Code does not in terms forbid the granting of a judgment in such cases. It simply declares that a judgment shall not be granted where "the action was not commenced within five years after the discovery, by the plaintiff, of the offence charged." The offense charged in this complaint is the commission of adultery between the years 1904 and 1905; so that the plaintiff has kept herself technically within the limits permitted by the Code, and she should be permitted to prevail, unless the courts have given the section such a construction as necessitates this court holding otherwise. The defendant cites the case of Williamson v. Williamson, 1 Johns. Ch. 488, 490, where Chancellor Kent wrote the opinion of the court. In that case a husband having been absent from his wife for eight years in a foreign country, and she, supposing him to be dead, married another person, and the first husband returning and finding his wife living with her second husband, without taking steps to procure a divorce, went abroad again, and after an absence of 20 years returned again, and filed a bill for divorce. The court refused the decree. The statute then in force declared "it shall be lawful for the court" to decree a dissolution. The court construed the statute as not necessarily mandatory in its provisions, but leaving to it the exercise of a sound discretion. The chancellor therefore, giving due consideration to the natural equities of the particular case, declined to permit the plaintiff in that case to prevail. This case was followed by that of Valleau v. Valleau, 6 Paige, 207, where the husband a few months after his marriage abandoned his wife and left the state, and the wife after the expiration of seven years in good faith married a second husband, who died four or five years before the first husband filed his bill for divorce founded upon such second marriage, and the bill was dismissed. There the second marriage was held voidable merely, but not void, under the statute. The court in disposing of this last case assumed to follow the case of Williamson v. Williamson; the

statute then in force authorizing the denial of a divorce where five years had elapsed since the discovery of the adultery charged.

It will be readily seen that these decisions are not necessarily conclusive as to the interpretation to be placed on section 1758 when applied to a case like the one at bar, where the facts and circumstances are quite different. We do not think these cases cited preclude this court from holding that even though the plaintiff had known of the defendant's remarriage about the time it took place, and of his continued relations with the co-respondent down to the time of her bringing this action, that she nevertheless would be entitled to her decree. When, however, we examine the evidence we must reach the conclusion that there is nothing in it which establishes knowledge on the plaintiff's part of the continued relations which existed between the defendant and his second wife. The most that can be claimed is that some time in 1896 the plaintiff heard that the defendant had married again. When the marriage was contracted, where it was contracted, or who the second wife was was not made known to her. Neither does it appear she ever knew where the defendant was living, except in a general way somewhere in the state of Florida. In 1897 the defendant departed from Florida and disappeared, and it was not until 1902 or 1903 that his whereabouts at or in Baltimore, Md., was discovered through the efforts of the plaintiff's brother-in-law. It is the fair inference that the defendant purposely concealed his whereabouts from the plaintiff. It cannot be assumed that the plaintiff was from those facts to be charged with knowledge of continued adulterous relations between the defendant and the co-respondent. From the correspondence introduced in evidence, the plaintiff might well question the fact that any divorce in Florida had been obtained. She had had no legal notice of such a proceeding, and she might well question the reported remarriage of the defendant. Or, if such a marriage took place, it did not follow that the parties had continued to live together as husband and wife all the years in question. The plaintiff certainly is not shown to have been in possession of such knowledge or information as would have enabled her to have proved a case to support an action for divorce, until she learned the defendant was living in Baltimore with the co-respondent as his wife. Discovery means something more than mere suspicion. It implies a certain degree of knowledge on the part of the person to be charged with the consequences of such discovery. Judge Brewer in the case of Marbourg v. McCormick, 23 Kan. 38, 43, said:

"'Discovery of the fraud' is the language of the statute. That implies knowledge; and is not satisfied by mere suspicion of wrong. The suspicion may be such as to call for further investigation, but is not of itself a discovery."

Again, in Parker v. Kuhn, 21 Neb. 413, 32 N. W. 74, 59 Am. Rep. 838, it was held that:

"The discovery, then, of which the statute speaks [that is, of the fraud], is of evidence or of evidential facts leading to a belief in the fraud and by which its existence or perpetration may be established, and not of the fraud itself as an existing entity."

Judge Finch, of our own Court of Appeals, has said in the case of Higgins v. Crouse, 147 N. Y. 416, 42 N. E. 6, in reference to the rule that should maintain in cases of fraud:

"I think the true rule is that, where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and, if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him. He will be held, for the purposes of the statute of limitations, to have actually known what he might have known and ought to have known."

The application of this rule to the case in hand can give no assistance to this defendant in sustaining the contention that the plaintiff's rights have been barred. As we have previously noted, the most that can be claimed from the evidence is that the plaintiff learned about 1896 that the defendant had remarried, but with whom such marriage was contracted or where it took place, or where the defendant was located at the time were not disclosed to the plaintiff. She had no means at her command of verifying the report, or proving the remarriage, or of knowing or proving that the parties were living together, or continued their relations, even if such a marriage had taken place. On the contrary, it appears the defendant had purposely concealed all these things from the plaintiff, with the intention that such knowledge should not come to her. It appears, too, that the plaintiff was not quiescent, nor did she shut her eyes to the rumor which had reached her, but, on the contrary, used such efforts as were at her command to learn the facts; for it appears from the testimony of her brother-in-law, Joseph Binns, that from 1897 until 1902 or 1903 he continued his efforts in the plaintiff's behalf to find and locate the defendant, and was unsuccessful until the latter date. We thus see that, giving the Code provision and the rule as broad an interpretation as can be claimed for them by the defendant, nevertheless the evidence does not disclose a case wherein the plaintiff should be denied the divorce asked.

We think the trial court was right in its findings, and that the judgment appealed from should be affirmed, with costs. All concur except GAYNOR, J., who reads for reversal, with whom JENKS, J., concurs.

GAYNOR, J. (dissenting). It is provided by section 1758 of the Code of Civil Procedure that the plaintiff is not entitled to a divorce when "the action was not commenced within five years after the discovery by the plaintiff of the offense charged." Where the adulterous intercourse is continuous, as under a ceremony of marriage, for instance, the discovery thereof sets such limitation of five years running from that date, for otherwise there would be no limitation in such a case. This obvious interpretation is given to the said provision by rule 72 of the Supreme Court, which in cases of defaults requires proof in such cases "that five years have not elapsed since the commencement of such adulterous intercourse was discovered by the plaintiff."

In August, 1896, the defendant obtained a divorce in the state of Florida by publication of the summons on his wife, this plaintiff, she being a resident of the state of New York. The divorce was valid in Florida, and immediately thereafter the defendant married another woman in that state and has continuously cohabited with her as his wife ever since. Cohabitation between November, 1904, and October, 1905, in the city of Baltimore, state of Maryland, where the defendant then resided and has continued to reside, is alleged as the adultery herein, and this action was begun in January, 1906.

The learned trial judge made a finding of fact in substance that the plaintiff knew of the defendant's divorce, and was informed of the defendant's re-marriage in October, 1896, by a letter from his mother; that she had her brother investigate the matter, which he did; that he received letters that the defendant was re-married and living with his new wife, and thereupon attempted to have the defendant indicted for bigamy in Florida; and that she often wrote and spoke to the defendant's sisters of the said re-marriage.

The learned trial judge says in his opinion, however, that the plaintiff did not have "evidential facts, provable facts", until within five years, and holds that the running of the period of limitation does not begin to run until such facts, i. e., the common law evidence of the re-marriage and cohabitation necessary to prove the case for a divorce, are collected; that until that time there is no "discovery." But this is not the true interpretation of that word. It is not limited to that strict and narrow meaning, but has reference to trustworthy information. The information and knowledge which the plaintiff had was no mere rumor; on the contrary, she was not only credibly and fully informed, but believed the information. Her brother, who was acting in her behalf, even tried to have the defendant indicted for bigamy for re-marrying. The law gives five years for the plaintiff to collect her or his evidence after such discovery, which is a liberal time. It makes no exception where the guilty spouse is a non-resident. The action may be commenced in such a case by publication.

The plaintiff's case is a hard one, but it is an old and true saying that hard cases make bad law, and that we have to avoid.

The judgment should be reversed.

JENKS, J., concurs.