Roslyn **FRIEDMAN**, Individually and for all other persons similarly situated, Plaintiff-Appellant,

v.

William **MEYERS** et al., Defendants-Appellees.

No. 732, Docket 73–1024.

United States Court of Appeals, Second Circuit.

Argued April 23, 1973.

Decided May 14, 1973.

**436**

Irving Lemov, New York City (Fuchsberg & Fuchsberg, New York City, of counsel), for plaintiff-appellant.

Frank R. Cohen, New York City (Farber & Cohen, New York City, of counsel), for defendants-appellees.

Before BREITENSTEIN,* KAUFMAN and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

In this purported class action based on alleged fraudulent diversion and misappropriation of funds by promoters and managers of a real estate syndicate Roslyn Friedman, an investor in the venture, appeals from an order of the district court, Sylvester J. Ryan, *Judge*, granting summary judgment dismissing her complaint. Judge Ryan's order was based principally on his view that a decision dated November 5, 1970, in an action instituted in the New York Su-

preme Court, Kings County, by another investor in the venture, determined the issues "adversely to the plaintiff [Friedman] and those she purportedly represented." However, in January, 1973, while the appeal in the present case was pending, that decision was reversed on the merits by the New York Supreme Court, Appellate Division, Second Department. It further appears that genuine issues as to material facts are raised with respect to all of the other claims and defenses in the action. Accordingly, we reverse the order of the district court.

Plaintiff in the present case is one of 302 purchasers of part interests in a real estate syndicate known as Gair Industrial Buildings, which consists of 17 commercial buildings located in Brooklyn. The defendants William Meyers and his law partner, Joseph J. Schwartz, organized the venture in 1956, negotiating for the purchase of the buildings and employing a financial statement and salesmen to offer to their clients, friends and relatives the opportunity to invest in it on the understanding that each investor would receive a 12% per annum return on his or her investment. Plaintiff claims that after she invested in the venture the defendants engaged in various fraudulent acts which resulted in their misappropriating syndicate funds for their own use at the expense of herself and other investors similarly situated.

Federal jurisdiction is invoked on grounds of diversity of citizenship. 28 U.S.C. § 1332. Plaintiff is a resident of Connecticut, defendants are residents of New York, and the amount claimed by plaintiff exceeds $10,000. Since no order has been entered permitting maintenance of the action as a class suit, we limit ourselves to consideration of it as an individual diversity action.[1] Plain-

* Of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

1. Although diversity, in a class suit, is determined by the citizenship of the *nam-*

*ed* representatives, Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); Calagaz v. Calhoon, 309 F.2d 248 (5th Cir. 1962); Boesenberg v. Chicago Title & Trust Co.,

tiff's supplemental complaint [2] alleges that defendant Meyers, after obtaining the sum of $2,790,000 from investors on his representation that he would purchase the Gair premises for the investors in their names, conspired with the other defendants fraudulently to withhold financial benefits from them and to misappropriate their funds by taking title to the premises in the name of defendant Blackmer Realty Corp. and causing Blackmer to lease the premises to Schwartz. It is charged that Meyers, in breach of his fiduciary duties, thereby gained rental income from the premises for the personal benefit of Schwartz and himself, failing to notify plaintiff of the true rental value of the premises and fraudulently representing to investors that the lease was for their benefit.

The complaint sets forth six additional causes of action, including claims that defendants concealed and diverted to their own use money raised in excess of the purchase price of the premises, that they fraudulently caused a new mortgage to be placed on the premises without notifying investors, which decreased the investors' equity, and that on June 30, 1972, they fraudulently caused the premises to be sold for $6.5 million without the knowledge or consent of the investors pursuant to a scheme whereby defendants received $1,099,273.54 out of the sales price. Plaintiff seeks removal of Meyers as trustee and record owner of the premises, rescission of the lease between Blackmer and Schwartz, and damages.

Defendants deny the material allegations of the complaint and assert various affirmative defenses, including laches, the New York six-year statute of limitations, *res judicata*, ratification of the

original transaction by plaintiff's acceptance of monthly payments for 16 years, and ratification by 96% of the investors of the June 30, 1972, sale of the premises. The *res judicata* defense was based on defendants' allegation that on November 5, 1970, in the New York Supreme Court, Kings County, action "by a member of plaintiff's class against one of the defendants (William Meyers) for the same claim as set forth in the plaintiff's complaint herein, judgment was rendered in defendant's favor dismissing plaintiff's action on the merits."

On August 2, 1972, defendants moved for summary judgment pursuant to Rule 56, F.R.Civ.P. Various affidavits in support of their motion, including that of Meyers, give their version of the facts and circumstances surrounding the investment of funds by plaintiff and other investors in the Gair Industrial Buildings syndication, the use of Blackmer as a conduit, the sale of the premises on June 30, 1972, and disclosures made to plaintiff and other investors. Attached to the supporting affidavits is a copy of a decision by Justice John H. Finn of the New York Supreme Court, Kings County, dated November 5, 1970, in an individual action instituted by an investor in the Gair Industrial Buildings syndicate named Brotman against William Meyers, seeking a judgment requiring him to "account concerning the operation, management, sale or transfer or mortgaging of the subject premises [Gair Industrial Buildings] and that he also account for all moneys received or disbursed since 1956." [3] Although Justice Finn's opinion does not reveal the exact nature of the claims made by the plaintiff in the action before him or the grounds upon which the accounting was sought, it does state that "There is no

128 F.2d 245 (7th Cir. 1942), there is doubt as to whether individual investors claiming less than $10,000 damages could qualify as members of the class. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Zahn v. International Paper Co., 469 F.2d 1033 (2d Cir. 1972), cert. granted, 410 U.S. 925, 93 S.Ct. 1370, 35 L.Ed.2d 585 (1973).

2. The original complaint was filed on February 7, 1972; a supplemental complaint was filed on October 27, 1972.

3. Justice Finn's opinion states: "This is not a class action but was brought solely by plaintiff. . . . ."

charge or claim of any fraud or wrongdoing of any kind on the part of the defendant." Holding that "the mere acceptance [by Meyers] of a bare agency is not sufficient to entitle the principal to an accounting by the agent," Justice Finn granted the defendant's motion to dismiss the complaint and directed the entry of judgment accordingly.

In opposition to defendants' motion, plaintiff submitted the affidavits of herself, her attorney, and various investors in the syndicate, which directly support her complaint's principal allegations of fraud and take issue with defendants' assertions that disclosure was made of the material facts allegedly concealed. With respect to defendants' contention that the action was barred by laches and the New York statute of limitations, plaintiff and other investors state under oath that they did not learn of the earlier material nondisclosures relied upon by them until 1971, which was less than a year prior to commencement of plaintiff's suit. Furthermore, the alleged fraudulent sale of the premises in June 1972 post-dated the institution of the action and was incorporated in the supplemental complaint filed with the court's permission on October 27, 1972.

█ On November 27, 1972, Judge Ryan filed a memorandum decision in the form of a one-page endorsement granting defendants' motion for summary judgment.[4] After describing defendants' motion and the general nature of the Gair Industrial Buildings venture, he disposed of the motion as follows:

"The record shows that the property involved in suit has been sold and that accounting claims were tried before Judge John H. Finn in the Supreme Court, Kings County, and determined by him on December 5 [sic], 1970 adversely to the plaintiff and those she purportedly represented.

"The defendants' motion to dismiss is granted with taxable costs, and the Clerk is directed to enter forthwith judgment dismissing the action on the merits and with taxable costs to defendants.

"So ordered."

While plaintiff's appeal in the present case was pending, the New York Supreme Court, Appellate Division, Second Department, filed its opinion 41 A.D.2d at 547, 339 N.Y.S.2d 735, at 736 (1973) reversing on the merits Justice Finn's decision and stating in pertinent part:

"By this action plaintiff [Brotman] sought an accounting of the operation of the syndicate to determine the present value of her interest and whether her received return properly represented her full interest in the income or profits of the syndication.

"Special Term found only a bare agency, such as did not entitle plaintiff to an accounting. With this we disagree. We find that plaintiff entrusted money to defendants for the purchase of real property to be held in defendant's name and we further find that the above-mentioned certificate of ownership constituted a declaration of trust, subscribed by the declarant (defendant) and thus in sufficient compliance with section 5–703 of the General Obligations Law. Based thereon, plaintiff is entitled to the relief sought (see Matter of Brown, 252 N.Y. 366, 375, 69 N.E. 612, 614; Hutchins v. Van Vechten, 140 N.Y. 115, 118, 35 N.E. 446)."

██ Turning to the case before us the defendants, by moving for summary judgment, assumed the burden of establishing that there was no genuine issue with respect to those material facts that would entitle them to dismissal of the complaint, Adickes v. S. H. Kress & Co.,

4. Judge Ryan's decision also denied plaintiff's cross-motion for partial summary judgment setting aside and canceling any and all releases obtained by defendants from other investors. This ruling, being interlocutory, is not appealable. See United States v. F. A. Baehner, Inc., 309 F.2d 154 (2d Cir. 1962); Rabekoff v. Lazere & Co., 323 F.2d 865 (2d Cir. 1963).

398 U.S. 144, 157, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970); Cali v. Eastern Airlines, Inc., 442 F.2d 65, 71 (2d Cir. 1971), including the absence of fraudulent intent on their part and plaintiff's knowledge of the facts allegedly concealed. Defendants have clearly failed to meet that burden.

We seriously question whether Justice Finn's decision, even if it had not been reversed, would be binding on the plaintiff here. See, generally, 6 J. Moore, Federal Practice ¶ 56.17 [52] (2d ed. 1972). That action was brought by a different investor who did not purport to act on behalf of Mrs. Friedman, and it involved different claims which did not charge any fraud at all, much less the alleged frauds relied upon by her. However, we need not decide whether that decision would be *res judicata*. It was reversed on the merits and was thus deprived of any binding effect that it might have had in the present case.

 The other claims and defenses in the present suit bristle with genuine issues as to the material facts. For instance, issues are raised as to the state of mind, intent and knowledge of the parties. We have repeatedly stated that summary judgment is particularly inappropriate where, as here, it is sought on the basis of "the inferences which the parties seek to have drawn [as to] questions of motive, intent, and subjective feelings and reactions," Cali v. Eastern Airlines, Inc., *supra* at 71, quoting Empire Electronics Co. v. United States, 311 F.2d 175, 180 (2d Cir. 1962). See Union Insurance Society of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 951 (2d Cir. 1965); Cross v. United States, 336 F.2d 431, 433 (2d Cir. 1964). Plaintiff states under oath that she did not discover the 1956 fraud until 1971. Accepting her averment under oath, as we must in the absence of proof conclusively establishing knowledge, her action would not be time-barred, since it was instituted within one year of her discovery of the fraud. See N.Y.C.P.L.R. §§ 203(f), 213(9) (McKinney 1972). At

this stage, furthermore, dismissal would not be justified on the ground that she may have received papers which would have lead an investor to suspect the existence of the true facts. Suspicion will not substitute for knowledge of facts from which fraud could reasonably be inferred. Erbe v. Lincoln Rochester Trust Co., 3 N.Y.2d 321, 326, 165 N.Y. S.2d 107, 111, 144 N.E.2d 78 (1957); see Ackerman v. Ackerman, 123 App. Div. 750, 755, 108 N.Y.S. 534 (2d Dept. 1908), affd., 200 N.Y. 72, 93 N.E. 192 (1910). Nor can the essential knowledge be founded on constructive notice based on the recordation of the Schwartz lease in the County Clerk's office. Cf. Mead v. Bunn, 32 N.Y. 275, 280 (1865).

For the foregoing reasons we reverse.