In re E.C. ERNST, INC., E.C. Ernst Midwest, Inc., E.C. Ernst International Corp., Debtors.

ENGSTRUM & NOURSE–STOLTE, Claimant,

v.

E.C. ERNST, INC., E.C. Ernst Midwest, Inc., E.C. Ernst International Corp., Objectants.

Bankruptcy No. 78 B 2139.

United States Bankruptcy Court, S.D. New York.

Nov. 5, 1982.

Shea & Gould, New York City, for debtors-objectants.

Weil, Gotshal & Manges, New York City, for claimant.

## DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND ON MOTION RE PRODUCTION OF DOCUMENTS

EDWARD J. RYAN, Bankruptcy Judge.

Prior to the commencement of this Chapter XI proceeding, the business of E.C. Ernst, Inc. ("Ernst") was electrical construction and contracting. In connection therewith, on June 23, 1978, Ernst entered into a subcontract agreement with Engstrom & Nourse-Stolte ("ENS"), a general contractor, to perform certain electrical work relating to the construction of the Engineering Center at the College of Engineering for the University of California.

Section 7 of the subcontract stated:

"In the event the Subcontractor fails to comply or becomes disabled from complying with the provisions herein as to character and time of performance ... the Contractor may, without prejudice to any

other right or remedy, take over and complete the performance of this contract at the expense of the Subcontractor .... As used in this section, the word 'expense' shall be defined to mean actual cost to Contractor plus an amount equal to fifteen percent (15%) of such cost on account of overhead. The expense incurred by the Contractor as herein provided ... and any damages incurred by such default, shall be chargeable to and paid by such Subcontractor .... It is agreed that Subcontractor shall be disabled from prosecuting the work covered by this subcontract ... if a petition under any of the chapters of the Bankruptcy Act ... is filed by or against the Subcontractor."

Each party performed his respective obligation under the subcontract until December 1, 1978, when Ernst filed its petition for reorganization under Chapter XI of the Bankruptcy Act. At that time Ernst, as Debtor-in-Possession, entered into negotiations with ENS to modify the terms of the subcontract so that Ernst could continue to participate in the project. These negotiations resulted in a "Supplemental Agreement" which provided that ENS would pay all of Ernst's labor costs for the project, including payroll taxes and fringe benefits. In addition, ENS was to assume all materials Purchase Orders and deduct the amounts of these orders from the total amount due Ernst under the subcontract. ENS also agreed to pay $1500 per month to Ernst for overhead expenses. The Supplemental Agreement was silent as to the rights of ENS to receive reimbursement from Ernst for these expenses, as provided by section 7 of the subcontract.

The parties continued to perform under the subcontract as modified by the Supplemental Agreement, and in November 1980, the project was completed.

On December 12, 1980, ENS filed a Proof of Claim as a general unsecured creditor for its "expenditures on behalf of E.C. Ernst, Inc., in excess of contract price, and fees and expenses."

On March 10, 1981, Ernst filed its proposed plan of arrangement in which it rejected the subcontract. On October 28, 1981, ENS filed an amended Proof of Claim as a priority claimant.

Ernst moved for an order expunging ENS' claim in its entirety, or, in the alternative, allowing the claim only as a general unsecured claim.

Thereupon, ENS filed this motion for summary judgment, claiming that the monies paid by ENS under the Supplemental Agreement were "expenses" under section 7 of the subcontract, chargeable to Ernst, and that Ernst assumed the subcontract by receiving benefits under it.

Ernst filed a cross-motion for summary judgment, claiming alternatively that Ernst rejected the original subcontract or that the Supplemental Agreement modified the subcontract so as to free Ernst from any liability thereunder.

In addition to the aforementioned proceedings and between the time of the filing of the motion and cross-motion, Ernst brought on by Order to Show Cause dated June 22, 1982, an application to expunge ENS' Claim No. 1163E based upon ENS' alleged failure to respond to Ernst's First Request for Production of Documents or, alternatively, to adjourn ENS' summary judgment motion and direct ENS to comply with Ernst's document request. That part of the application seeking adjournment is moot because both the motion and cross-motion for summary judgment are denied.

The draconian sanction of expungement of a claim for failure to respond adequately to discovery requests is too severe to be imposed herein.

ENS has complied to a certain extent with the discovery requests; however, in its "Statement" in opposition to the Motion to Expunge, ENS lists categories wherein it has failed to meet the discovery requests.

Although ENS alleges that these categories do not relate to the issue of priority status, they could relate to the issue of breach of contract which would have an impact on the priority issue. In any event,

the First Request for documents was not limited to the issue of the status of ENS' claim.

ENS is directed to produce all documents requested by Ernst in its First Request and to produce a witness who can testify as to the existence and contents of relevant files. ENS might want to accept Ernst's offer, as an alternative to physical production here, and permit an Ernst representative to go to ENS' office in California (at ENS' expense) to review the pertinent files there.

■ Returning to the motions for summary judgment, sections 313 and 357(2) of the Bankruptcy Act govern the rejection of executory contracts in Chapter XI proceedings.

Section 313, 11 U.S.C. § 713, provides that upon the filing of a petition for rejection, the court may "permit the rejection . . . upon notice to the parties to such contracts and to such other parties in interest as the court may designate." Alternatively, section 357(2), 11 U.S.C. § 757(2), provides that a debtor-in-possession may provide for the rejection of an executory contract in its Chapter XI plan. Thus, a debtor must take affirmative action to reject an executory contract.

> "The failure to assume affirmatively an executory contract does not result at any time in the rejection of the contract. Whether the debtor is in possession, or whether there is a receiver or trustee, the contract can be rejected only by affirmative action under § 313(1) and Chapter XI Rule 11–53 or § 357(2). Unless so rejected, the contract continues in effect."

8 Collier on Bankruptcy par. 3.15(6) (14th Ed. 1976).

■ "Tacit" rejection of an executory contract, by conduct or implication alone, does not fulfill the statutory requirements set forth in the Bankruptcy Act. *Matter of Innkeepers of New Castle, Inc.,* 671 F.2d 221 (7th Cir. 1982); *In re W.T. Grant Co.,* 620 F.2d 319 (2d Cir. 1980); *Matter of Unishops,* 553 F.2d 305 (2d Cir. 1977); *Federal's Inc. v. Edmondton Investment Co.,* 555 F.2d 577 (6th Cir. 1974); *In re Greenpoint Metallic Bed,* 113 F.2d 881 (2d Cir. 1940).

■ Ernst's claim that it affirmatively rejected the original subcontract with ENS by its conduct in negotiating and entering into the Supplemental Agreement is without merit.

■ Nor did Ernst effectively reject the subcontract by the provisions of its Chapter XI Plan of Arrangement. Where a debtor-in-possession provides for the rejection of an executory contract in its Plan, the rejection is not effective unless and until the arrangement is confirmed. A contract which is no longer executory cannot be rejected by a debtor-in-possession. 8 Collier on Bankruptcy, Par. 3.15[9] (14th Ed. 1979).

An executory contract is defined as "a contract under which the obligations of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). See also *In re Barney Schogel, Inc.,* 12 B.R. 697, 721 (S.D.N.Y.1981).

While there is no doubt that the subcontract was executory as of the date Ernst filed its Chapter XI petition, by the time Ernst finally submitted its Plan proposing to reject the subcontract, the subcontract had been fully performed by both parties, except for the settlement of this claim. In fact, the Plan was submitted almost four months after the project was completed, and it still has not been approved by this court.

As the court in *Matter of Innkeepers of New Castle, Inc., supra,* stated, "The purported rejection came too late, as [the creditor] had long since fully performed his obligations under the contract." 671 F.2d at 226.

However, Ernst contends that even if its attempted rejection of the subcontract is determined to be invalid (as this court holds), ENS' priority claim must fail because Ernst did not assume the subcontract.

■ It is well settled law that a claim arising under an executory contract in a Chapter XI proceeding is entitled to priority only if the debtor-in-possession affirmatively assumes the contract or receives benefits thereunder. *In re W.T. Grant, supra; Matter of Unishops, supra; In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir. 1976).

■ Although the parties are in dispute about whether the Supplemental Agreement or any other correspondence constituted an affirmative assumption, it is clear from the facts at hand that Ernst received sufficient benefits by the execution of the subcontract for such to constitute an assumption of the subcontract. As was stated by the District Court in *In re W.T. Grant, supra,* "[A] formal assumption of the contract is unnecessary where the debtor-in-possession reaps the benefits of the contract during a Chapter XI proceeding." 474 F.Supp. 788, at 793.

The court held that W.T. Grant received benefits under the executory contracts with its employees by permitting the workers to continue in Grant's employ after it entered Chapter XI. "Grant secured the services of an experienced Grant personnel during the Chapter XI proceeding. Apparently, had Grant been forced to terminate all its employees upon entering Chapter XI and therefore recruit a new work force, even its short-lived Chapter XI attempt would have been virtually impossible." 620 F.2d at 321.

Similarly, in *Matter of W.T. Grant Co.,* Bankr. No. 75 B 1735 (S.D.N.Y.1981), it was held that the debtor-in-possession had received benefits under a trade contract by accepting goods after the filing of the petition, and therefore Grant had, in effect, assumed the contract. Accord, *In re Mammoth Mart, supra; Matter of Unishops, supra.*

■ In the case at bar, it is inconceivable that Ernst received "no benefits at all" as a result of its continued performance of the electrical work on the project after it filed its bankruptcy petition, and that it continued performance "for the sole purpose of assisting ENS in mitigating ENS'

losses." *Debtor's Memorandum of Law,* at 53. The very fact that Ernst was thus able to continue its business operations by maintaining its labor force and demonstrating stability in the face of the reorganization proceeding is sufficient evidence that Ernst received enough benefits under the contract to constitute an assumption. Even the mitigation of ENS' losses so as to reduce its claim against the estate, in itself constitutes a benefit. There is no requirement, either in the Bankruptcy Act or in case law, that the benefits to the estate must exceed some threshhold amount before an assumption will be recognized. The mere fact that any benefits were received by Ernst is sufficient for this court to hold that ENS is entitled to priority status for any claims it may have against Ernst under the terms of the subcontract.

However, there remains at least one matter in dispute between ENS and Ernst, namely, the respective intent of each party as they negotiated and entered into the Supplemental Agreement. Ernst contends that by entering into the Supplemental Agreement it intended to supersede section 7 of the subcontract, which provided that in the event Ernst was unable to perform under the contract ENS could complete performance at Ernst's expense.

ENS contends that the Supplemental Agreement was intended to supplement the subcontract within the terms allowed by section 7.

In addition, Ernst alleges that ENS might have breached the subcontract and caused additional expenditures beyond those called for by the subcontract, thereby precluding ENS from the right to any claim, administrative or otherwise.

■ FRCP 56(c), made applicable to this proceeding by Bankruptcy Rule 756, states, in pertinent part, that a judgment favorable to the movant "shall be rendered" if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In other words, where the facts, as presented in the pleading, affidavits and other materials are so forcefully homogeneous that

there are no facts left in dispute, summary judgment is appropriate. However, absent such consonance of material facts, summary judgment is inappropriate. *Friedman v. Meyers,* 482 F.2d 435, 439 (2d Cir. 1973); *American Mfrs. Mut. Ins. Co. v. American Broadcasting—Paramount Theaters, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967), *on remand* 45 F.R.D. 38 (S.D.N.Y.1968), *later app.* 446 F.2d 1131 (2d Cir. 1971), *cert. denied* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

█ It has long been the practice of this court to deny summary judgment where ambiguous contract provisions are at issue. *Schiess-Froriep Corp. v. S.S. Finnsailor, et al.,* 574 F.2d 123 (2d Cir. 1977); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975); *Socony Mobil Oil Co. v. Humble Oil and Refining Co.,* 387 F.2d 155 (10th Cir. 1967). Specifically, summary judgment will be denied when issues of the parties' intent are questionable. *Friedman v. Meyers, supra,* at 439.

█ It is clear from the memoranda submitted by the parties and from the hearing held on July 14, 1982, that the provisions of the Supplemental Agreement are susceptible of more than one interpretation. Also, the question of possible breach of contract requires further investigation by way of discovery and hearing. Therefore, summary judgment must be denied, so that an evidentiary hearing can be held to determine the effect of the Supplemental Agreement, the possibility of ENS' breach of the subcontract and other related issues.

Settle an appropriate order.