**In re The NATIONAL SUGAR REFINING COMPANY, Debtor.**

**The NATIONAL SUGAR REFINING COMPANY and Bankers Trust Company, Plaintiffs,**

**v.**

**ENTENMANN'S, INC., Defendant.**

**Bankruptcy No. 81 B 11756 (EJR).**
**Adv. No. 82–5017–A.**

United States Bankruptcy Court, S.D. New York.

Dec. 14, 1982.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant.

Finley Kumble, Wagner, Heine, Underberg & Casey, New York City, for plaintiff/debtor.

Moses & Singer, New York City, for plaintiff Bankers Trust Co.

DECISION ON MOTION FOR SUMMARY JUDGMENT

EDWARD J. RYAN, Bankruptcy Judge.

On or about September 3, 1981, The National Sugar Refining Company ("Nation-

al") filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. National was continued in possession of its property and in operation of its business pursuant to Section 1108 of the Bankruptcy Code. Prior to the filing of the petition, National was in the business of refining and processing raw cane sugar and marketing various sugar products.

As of the filing date, Bankers Trust Company ("Bankers Trust") was a creditor of National in the approximate sum of $23 million. Said indebtedness was secured by a security interest in and upon personal property (other than machinery and equipment) of National, including, without limitation, National's contract rights, inventory, accounts and proceeds thereof. National and Bankers Trust have joined as plaintiffs in the action before the court.

On January 7, 1982, National commenced this adversary proceeding pursuant to Bankruptcy Rule 701 and Rule 7001 of the Interim Bankruptcy Rules. National filed a summons and complaint against Entenmann's, Inc. ("Entenmann's") on January 12, 1982. As of the date of the filing of National's Chapter 11 petition, National was party to four contracts with Entenmann's. The relief requested by National and Bankers Trust in this adversary proceeding is either an order authorizing National to assume the contracts or, in the alternative, damages against Entenmann's as a result of Entenmann's purported repudiation of said contracts.

On February 3, 1982, Entenmann's filed a Notice of Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure Rule 56(b), and Rule 756 of the Rules of Bankruptcy Procedure, seeking dismissal of the complaint. National opposed the motion for summary judgment raising numerous material issues of fact, including course of dealing between the parties, which require an evidentiary hearing.

On November 24, 1980, National agreed to sell to Entenmann's 75,000 to 150,000 bags of refined sugar. Pursuant to the agreement of November 24 and a subsequent letter agreement dated April 10, 1981, Entenmann's entered into four individual contracts with National whereby National agreed to deliver to Entenmann's and Entenmann's agreed to accept a specific quantity of sugar at specific prices during specific delivery periods.[1] National was to obtain the raw sugar necessary to meet the obligations of the July contracts from Farr Man International, Inc. ("Farr Man"), a vendor for Entenmann's. Farr Man buys sugar for Entenmann's and then Entenmann's turns the sugar over to National for refining.

Beginning in July, Entenmann's began placing orders in the ordinary course of its business against the July contracts; these orders were filled. Of the 44,572 hundredweights of sugar to be delivered to Entenmann's under the July contracts, only 28,252 hundredweights were delivered.

On September 3, 1981, Fuchs Sugars & Syrups, Inc. ("Fuchs Sugars"), a broker for Entenmann's, attempted to place an order with National pursuant to Contract No. 3560–B. National informed Fuchs Sugars that refined sugar would not be available for shipment to Entenmann's on these dates. Entenmann's placed additional orders with National on September 9, 17, 21 and 28, and on October 5, 1981. National, however, refused to deliver the requested sugar because at the time National filed its petition for reorganization Entenmann's allegedly owed National $285,604.16 for 25,805 hundredweights of refined sugar previously delivered to Entenmann's pursuant to Contract No. 3560–B.[2] As a result, Entenmann's purchased its requirements on the spot market.

---

**1.**

| Contract Number | CWT | Delivery Period | Price |
| --- | --- | --- | --- |
| December Contracts (3560 | 20,000 | Oct.–Dec. 1981 | $26.41/cwt |
| (3560A | 20,000 | Oct.–Dec. 1981 | $26.46/cwt |
| July Contracts (3560B | 42,519 | July–Sept. 1981 | $41.395/cwt |
| (3560B–1 | 4,053 | July–Dec. 1981 | $41.395/cwt |

**2.** On December 11, 1982, after the filing of the petition, Entenmann's forwarded to Bankers Trust a check payable to National in the amount of $285,604.16.

On September 28, 1981, Ludlow Miller, Vice President of Sales for National, allegedly learned that Entenmann's intended to accept sugar from National and withhold payment for the sugar because of National's refusal to pay the Farr Man debt.

On October 2, 1981, Fuchs Sugars informed Entenmann's that National would not ship any additional sugar without a guarantee of payment and that National refused to pay $145,696.01 owed to Farr Man for raw sugar received (44,572 cwt).[3] National also refused to refine the raw sugar for Entenmann's. Entenmann's, thereupon, paid to Farr Man the $145,696.01 owed to Farr Man by National.[4]

Also on October 2, 1981, Mr. Miller sent a letter to Entenmann's informing them that National considered its contracts with Entenmann's "to be in full force and effect unless and until an order is issued by the bankruptcy court ... stating to the contrary."

The complicated set of conflicting facts requires an evidentiary hearing and therefore a denial of the motion for summary judgment. Several material facts are in dispute. "... [W]hen the party against whom summary judgment is sought comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of any material fact, that procedural weapon of summary judgment is inappropriate. Indeed, it is the very purpose of the trial to establish which party's version of the contested circumstances best comports with reality." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). *See, also, In re Proof of the Pudding, Inc.*, 10 B.R. 459, 562 (Bkrtcy.S.D.N.Y.1981).

National's Statement in Response to Defendant's Statement Pursuant to Local Rule 3(g) lists fifteen issues which need to be tried. The basic questions are whether National or Entenmann's breached the contracts, whether the contracts terminated by their own terms, and whether the course of dealing between National and Entenmann's required that Entenmann's accept sugar after the periods specified in the contracts.

In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theaters, Inc.*, 388 F.2d 272, 279 (2d Cir.1967) on remand 45 F.R.D. 38 (S.D.N.Y.1968), *later app.* 446 F.2d 1131 (2d Cir.1971), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972); *Friedman v. Meyers*, 482 F.2d 435, 439 (2d Cir.1973); *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65, 71 (2d Cir.1971). Furthermore, on a motion for summary judgment, the court must resolve all doubts in favor of the party opposing the motion. *Heyman v. Commerce and Industry Insurance Co. ("Heyman")*, 524 F.2d 1317, 1320 (2d Cir. 1975) citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The court must determine the status of the contracts before it decides whether to grant the relief that National requests. In order to do so, the underlying facts must be established first in the context of a full evidentiary hearing.

Entenmann's motion for summary judgment is denied. Settle an appropriate order.

---

**3.** National had contracted to refine the raw sugar for Entenmann's. The customary course of doing business required National to pay Farr Man 95% of the purchase price upon receipt of the raw sugar and the remaining 5% upon determination of laboratory quality under Amstar's general contract provisions.

**4.** Entenmann's paid the debt owed to Farr Man by National purportedly as the result of a business decision in order to maintain a good continuing business relationship with Farr Man.